UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THE UNITED STATES OF AMERICA *ex rel.*
CANDI SIBLEY                                                    PLAINTIFFS

v.                                              Civil No. 4:17-cv-000053-GHD-RP

DELTA REGIONAL MEDICAL CENTER                                  DEFENDANT

---

## MEMORANDUM OPINION

The Emergency Medical Treatment Act, 42 U.S.C. § 1395dd, requires that hospitals that receive Medicare funds provide medical treatment to patients who present with emergency medical conditions and stabilize them before transferring them to another facility. Candi Sibley claims that on numerous occasions Delta Regional Medical Center failed to treat patients with emergency medical conditions before transferring them to other facilities as EMTALA requires.

The False Claims Act, 31 U.S.C. §§ 3729 *et. seq*, imposes liability on anyone seeking payment from the United States government, such as a hospital seeking Medicare or Medicaid reimbursements, for knowingly submitting a false or fraudulent claim for that payment. Sibley asserts that Delta Regional's EMTALA violations, and its failure to report them to the government, make the subsequent Medicare and Medicaid reimbursements Delta Regional sought false.

The False Claims Act permits private individuals, such as Sibley, who know of fraudulent claims to bring an action on the government's behalf. But the Act provides that even when a private individual brings that action, the government may step in and move to dismiss any claims against the defendant. The question this case presents is what standard the Court should use to determine whether the government's motion to dismiss ought to be granted.

1

As the Court sets out below, both the text of the False Claims Act and case law establish that the government's decision to dismiss a False Claims Act case is one committed to the its discretion. And even if the government must show that dismissal is rational related to a valid government purpose, as Sibley claims it must, the government meets that burden here. Thus, the United States' motion to dismiss, Doc. 60, should be granted.

## Background

### I. The Emergency Medical Treatment and Labor Act

The Emergency Medical Treatment and Labor Act ("EMTALA") requires that when a patient comes into a hospital emergency room, the hospital perform a medical screening to determine if the patient has an emergency condition. 42 U.S.C.A. § 1395dd(a). If the screening reveals that the patient has an emergency medical condition, the hospital must treat the patient until the emergency condition is stabilized. § 1395dd(b)(1)(A).

Unless the patient is first stabilized and no longer has an emergency medical condition, the hospital can transfer the patient to another facility under only two conditions. First, if the patient, after being informed of the hospital's EMTALA obligations, requests in writing to be transferred; and second, when a physician or other qualified medical person certifies that the medical benefits of transfer outweigh the risks. § 1395dd(c)(1).

### II. The False Claims Act

The False Claims Act, in relevant part, imposes liability on anyone who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> . . .
> (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property
> . . .
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or

2

property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(A)(1). To establish a violation of the False Claims Act, the plaintiff must show that "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the Government to pay out money or to forfeit moneys due (i.e. that involved a claim)." *U.S., ex rel. Jamison v. McKesson Corp.*, 784 F. Supp. 2d 664, 675 (N.D. Miss. 2011) (citing *U.S. ex rel. Longhi v. Lithium Power Tech, Inc.*, 575 F.3d 458, 467 (5th Cir. 2009)).

The False Claims Act permits a private individual, known as a relator, to "bring a civil action for a violation of § 3729 . . . in the name of the Government." *Id.* § 3730(b). The Government may intervene and conduct the action itself, or it may decline intervention and permit the citizen to conduct the action. *Id.* § 3730(b)(4). Even where the Government does not intervene, however, it "may dismiss the action notwithstanding the objections of the person initiating the action." § 3730(c)(2)(A).

## III. Factual and Procedural Background

Sibley previously worked at Delta Regional in its emergency department. Compl., Doc. 16 at 15 ¶ 57; Declaration of Candi Sibley, Doc. 45-1, at 1, ¶ 2. During her employment, she came to believe that Delta Regional was intentionally failing to provide appropriate emergency care to individuals who came into Delta Regional's emergency room. Declaration, Doc. 45-1 at 4, ¶¶ 8–9. She employed an outside physician to review Delta Regional's medical records. The physician identified several potential EMTALA violations. *Id.* at 4–5, ¶ 10

Sibley filed the present *qui tam* action. In her amended complaint she identifies 52 instances where a Delta Regional failed to render emergency care as required by EMTALA. Compl., Doc. 16 at 15–35, ¶¶ 58–243 In 44 of those instances, she alleges only

that the "unstable patient was inappropriately transferred." Four of the five counts in the complaint relate to those EMTALA violations.[1]

The government elected not to intervene. Notice of Election to Decline Intervention, Doc. 13. Delta Regional filed a motion to dismiss. Doc. 34. The Court took notice of a similar False Claims Act case in the Southern District of Mississippi, also asserting False Claims Act claims based on EMTALA violations.[2] The government also declined to intervene there but was nonetheless considering moving for dismissal. This Court ordered the government to state whether they intended to move to dismiss this case. The government responded by filing the instant motion seeking to dismiss the first four counts of the complaint.[3] In addition to her response in opposition to the government's motion, Sibley has also filed a motion to convert the motion to one for summary judgment and allow discovery under Rule 56(d). Doc. 74.

## Analysis

### I. Dismissal as of right vs. dismissal for good cause shown

In a False Claims Act case, it is the government, not the relator, who is the injured party. Even when the government declines to intervene and conduct the case itself, the False Claims Act gives the government certain powers over the litigation. These powers include the right to dismiss the case "notwithstanding the objections of the [relator]." 31 U.S.C. § 3730(c)(2)(A).

---

[1] In the fifth count, Sibley alleges that Dr. Robert Corkern, a physician barred from receiving Medicaid funds, provided services to patients, and that Delta Regional falsified medical records to reflect that other individuals provided that treatment before billing Medicaid.

[2] *See U.S. ex. rel. Vanderlan v. Jackson Health HMA*, 3:15-cv-00767-DPJ-FKB (S.D. Miss. Oct. 23, 2015). Like this case, the relator in *Vanderlan* argues that the defendant hospital is liable under the False Claims Act for alleged EMTALA violations. The relator in *Vanderlan*, Dr. Blake Vanderlan, is the same physician which Sibley employed to review the alleged EMTALA violations before filing this suit. Additionally, the original complaint in this action listed Vanderlan as relator. Finally, the same counsel represents both Vanderlan and Sibley.

[3] The government staked no position on count V.

The government argues that this provision gives it unilateral power to dismiss any False Claims Act action—if the government wants to dismiss the case, the government can. Sibley, however, argues that the government must put forward some reason that bears a rational relation to a valid government purpose.

The government responds by saying that even if that were true, there are valid reasons for dismissal here. Namely, the government asserts that maintaining this case will interfere with the Department of Health and Humans Services efforts to enforce EMTALA; that the case will require the use of scarce government resources; and finally, that the complaint does not allege any viable false claims.

The section of the False Claims Act at issue here provides that:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A). Courts agree that it is unnecessary for the government to formally intervene before moving to dismiss. *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1286 (11th Cir. 2017) (citing *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 933 (10th Cir. 2005)). Courts are split, however, on whether this statute permits the government to unilaterally dismiss *qui tam* actions brought under the False Claims Act without reason, or whether the United States must show that dismissal serves a valid government purpose. *Compare Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003) *with U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998).

The United States argues that the Fifth Circuit would adopt the D.C. Circuit's reasoning in *Swift* and hold that the United States may dismiss this case without first showing good cause supports dismissal. Sibley argues that the Court should use the Ninth Circuit's *Sequoia Orange* standard. Beyond that, she asserts that the *Swift* standard is inapplicable once the defendant has been served. Thus, the Court sets out to determine when the government may dismiss a *qui tam* False Claims Act case.

The Ninth Circuit first considered this question in *U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998). The dispute there arose out of alleged violations of prorate restrictions and reporting requirements on marketing orders for navel and Valencia oranges. *Id.* at 1141. After protracted litigation, the USDA amended its citrus industry policies and decided to no longer enforce the statutes and regulations the defendants had violated. To that end, the government moved to dismiss all of the pending False Claims Act cases premised on violations of those regulations. *Id.* at 1142. The district court granted the motion, and in doing so, held that the government must identify a valid government purpose and show a rational relationship between that purpose and dismissal. *Id.* at 1145 (citing *U.S. ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1341 (E.D. Cal. 1995)).

On appeal, the Ninth Circuit first determined that § 3730(c)(2)(A) did not identify a standard to apply. *Id.* They reasoned that the district court's standard was reasonable because it conformed with the notion that the government must not act arbitrarily. *Id.* at 1145. Further, the Ninth Circuit gave weight to a Senate report on the statute which "explained that relators may object if the government moves to dismiss without reason." *Id.* (citing S. Rep. No. 99–345, at 26 (1986)). Finally, they dismissed any separation of powers concerns by holding that standard applied was no greater than "mandated by the Constitution itself." *Id.* at 1146. Thus, the standard did not impermissibly require judicial approval over executive authority. *Id.* at 1145–1146.

Next, in *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003), the D.C. Circuit considered whether a lower court was correct in applying the *Sequoia Orange* rational relationship standard. The Court held the rational relationship test was incorrect, and that the government possesses "an unfettered right to dismiss a [*qui tam*] action." 318 F.3d at 252.

The D.C. Circuit first started with statute's text, noting that the statute appears to give the executive the power to dismiss unilaterally: "The section states that 'The Government'—meaning the Executive Branch, not the Judicial—'may dismiss the action,'. . .

suggests the absence of judicial constraint." *Id.* (quoting § 3730(c)(2)(A)). The court also equated a motion to dismiss in this context with a decision not to prosecute, which was "a decision generally committed to [the government's] absolute discretion." *Id.* at 253 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831–33, 105 S. Ct. 1649, 1655–57, 84 L.Ed.2d 714 (1985) (alteration in original)). The court discounted the Senate Report cited by the Ninth Circuit, noting that that report concerned an unenacted version of the Act. *Id.* Finally, the D.C. Circuit concluded that the requirement that the Court provide the relator with an "opportunity for hearing" did not impose judicial oversight. Instead, it was intended to "give the relator a formal opportunity to convince the government not to end the case. *Id.*

## II. The motion will not be converted to one for summary judgment.

In addition to outright opposing the government's motion to dismiss, Sibley also seeks to convert it to a motion for summary judgment. She contends this is appropriate because all parties have submitted record evidence in support of the motion to dismiss.

Sibley asserts that her motion is brought pursuant to Rule 56(d). That rule provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Since the government has not filed a motion for summary judgment, Rule 56(d) is inapplicable and provides no authority for her request.

Nor is there any other reason to convert this motion. Rule 12(d) provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P 12(d). When the government moves to dismiss in a False Claims Act case, however, it does so under the statutory authority of 31 U.S.C. § 3730(c)(2)(A), not under Rule 12 of

the Federal Rules. Whatever the appropriate standard to apply to the government's motion to dismiss under § 3730(c)(2)(A), the merits of the relator's claims are irrelevant. *Sequoia Orange Co.* 1144-45 (holding that government had authority under § 3730(c)(2)(A) to dismiss meritorious claims); *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005) (affirming dismissal of False Claims Act action under § 3730(c)(2)(A) where government conceded that relator's claims had merit). Accordingly, the Court will not convert the motion to one for summary judgment.[4]

### III. The United States possesses the unfettered discretion to dismiss *qui tam* suits.

Turning to the critical question, the Court holds that the government possesses the unfettered discretion to dismiss a *qui tam* False Claims Act action.

Prior Fifth Circuit precedent strongly supports a reading of § 3370(c)(2)(A) that gives the government this power. In two separate cases, the Fifth Circuit has examined the power given to the government over cases brought under § 3730. First, in *Searcy v. Philips Electronics N. Am. Corp.* the Fifth Circuit considered "whether the False Claims Act gives the government the power to veto a settlement after it has declined to intervene in both the trial and appellate courts." 117 F.3d 154, 155 (5th Cir. 1997). The Court found the last sentence of §3730(b)(1) to be unambiguous: "The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." *Id.* at 159 (quoting statute). Thus, the court held, the government could stop any settlement between a relator and the defendant.

---

[4] Even were this a Rule 12 Motion, the Court finds Sibley's stated reason for seeking a conversion without merit. Of the thirteen items of "record evidence" Sibley contends the parties have submitted, three are Court orders, and as such not evidence, but instead case law, one is a memorandum brief from the *Vanderlan* case, and eight are documents submitted by Sibley. *See* Mem. Doc. 75 at 6-7. A plaintiff may not sidestep a Rule 12 motion "by unilaterally presenting matters outside the pleadings." *Sherman v. Tennessee*, No. 16-02625, 2017 WL 2589410, at *10 (W.D. Tenn. June 14, 2017).

In that decision, the court examined other provisions of the statute that gave the government great power over the action, even when relator "conducted" the action because the government declined to intervene. In particular, they noted that "the government retains the power to take the more radical step of unilaterally dismissing the defendant." *Id.* (citing 31 U.S.C. § 3730(c)(2)(A)). The court reasoned that if § 3730(c)(2)(A) gave the government absolute authority to dismiss the action, then granting the government authority to veto any settlements "[did] not conflict with the relator's statutory right to control the litigation when the government chooses to remain passive." *Id.*

Next, in *Riley v. St. Luke's Episcopal Hosp.*, 262 F.3d 749 (5th Cir. 2001), the Fifth Circuit, sitting *en banc*, considered whether the False Claims Act's provision permitting the relator to conduct the litigation after the government declined intervention unconstitutionally interfered with the executive's power to conduct litigation on behalf of the United States.

Holding it did not, the court again noted the myriad of ways the government retains control over *qui tam* litigation, even when it did not intervene: the government could "pursue alternative remedies, such as administrative proceedings," "settle the case over the relator's objections," and "stay discovery" when necessary. *Id.* at 744–745 (internal quotations and citations omitted). Again, the Court highlighted the "unilateral power to dismiss an action notwithstanding the objections of the person." *Id.* at 744 (citing *Searcy*, 117 F.3d at 160).

Sibley claims that the D.C. Circuit believed that the Fifth Circuit would hold that the *Sequoia Orange* standard was correct. She says this because the D.C. Circuit in *Swift* did not cite *Riley*, but another Fifth Circuit case, *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975). *Cowan*, however, did not concern § 3730, and the D.C. Circuit cited it only in support of the proposition that in some instances "there could be judicial review of the government's decision that an action brought in its name should be dismissed." *Swift*, 318 F.3d at 252 (citing *Cowan*, 524 F.2d at 513). More importantly, the Court cannot let what

the D.C. Circuit didn't say outweigh what the Fifth Circuit did, and the Fifth Circuit has all but explicitly stated that the government's decision to dismiss a *qui tam* false claim case is its choice alone.[5]

Giving the government the unilateral power to dismiss *qui tam* actions is consistent with the notions of prosecutorial and executive discretion. Section 3730(a) provides that when the government discovers a violation of the False Claims Act it "*may* bring a civil action" against the violator. If it *may* bring an action, the government is also permitted *not* to bring an action, and the decision "not to prosecute or enforce, whether through civil or criminal process" is one "committed to an agency's absolute discretion." *Heckler*, 470 U.S. at 831, 105 S. Ct. 1649.

Now, to be sure, decisions not to prosecute are, in most cases, distinct from decisions to "dispose of a pending case." *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1236 (D.C. Cir. 2012) (citing *Heckler*, 470 U.S. at 833, 105 S. Ct. 1649, and *Rinaldi v. United States*, 434 U.S. 22, 29–30 & n. 15, 98 S. Ct. 81, 54 L.Ed.2d 207 (1977)). In a *qui tam* case, however, it is not the government, but a private individual who initiates the action. To permit a private individual to unilaterally bring suit "in the name of the Government," 31 U.S.C. § 3730(b), and then to impose standards on the executive when it seeks to dismiss that suit usurps the executive's role as "the absolute judge of whether a prosecution should be initiated . . . ." *Cowan*, 524 F.2d at 513. Thus, the government's decision to dismiss a *qui tam* case is tantamount to the government's decision not to bring the action at all, and

---

[5] Again, *Riley* suggests that the Fifth Circuit's interpretation of § 3730(c)(2)(A) provides for unilateral power of dismissal. In comparing the False Claims Act's *qui tam* provisions to Rule 48 of the Federal Rules of Criminal Procedure, which state that the government may not dismiss a criminal matter "without leave of court" Fed. R. Crim. P. 48(a), the court found the False Claims Act's provisions "comparatively modest." *Riley*, 252 F.3d at 757. If the False Claims Act is "comparatively modest" to Rule 48(a), which only requires court permission before the government dismisses criminal cases, the False Claims Act must allow for unilateral dismissal by the government.

the Court should give it the same deference. [6] *See Swift*, 318 F.3d at 252. The general rule that such decisions are unsuitable for judicial review must hold. *See Heckler*, 470 U.S. at 832–834.

The text of § 3730 supports this position. *Lawson v. FMR LLC*, 571 U.S. 429, 440, 134 S. Ct. 1158, 1165, 188 L. Ed. 2d 158 (2014) ("In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning.") (internal quotations omitted).

The first part of § 3730(c)(2)(A) states that "The Government may dismiss the action with the defendant notwithstanding the objections of the [relator] . . ." The text puts the prerogative of dismissal with the executive. "May" means "To be permitted to." MAY, Black's Law Dictionary (10th ed. 2014). Consistently, when the statute gives authority to the government, especially about decisions on how to manage the action, it provides that "the Government may . . . ." For example, § 3730(b)(2) provides that "The Government may elect to intervene and proceed with the action . . .", and § 3730(c)(5) provides that "Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy . . . ."

Further, in numerous instances, the statute explicitly states when a showing by the government or a finding by the court is required. Section 3730(b)(1), the provision that allows actions by private individuals, states that if a relator wishes to dismiss the action voluntarily, "[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and *their reasons for consenting*." § 3730(b)(1); *Searcy* 117 F.3d at 158. If the government initially declines but later wishes to intervene, it may do so "upon a showing of good cause." § 3730(c)(3). Likewise, the government can seek

---

[6] To treat it otherwise would go against the spirit, if not the letter, of the Fifth Circuit's decision in *Riley*. A critical factor in the court's determination that the *qui tam* provisions of the False Claims Act did not violate the separation of powers doctrine was that the government still had the power to dismiss the suit. *Riley*, 252 F.3d at 753.

a stay in discovery if it can show that discovery "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts." § 3730(4). "Courts have a 'duty to construe statutes, not isolated provisions.'" *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290, 130 S. Ct. 1396, 1404, 176 L. Ed. 2d 225 (2010) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568, 115 S. Ct. 1061, 131 L.Ed.2d 1 (1995)). Clearly, when the statute requires that the government show something, the statute explicitly says so, and when the government is not required, it does not.[7]

Most convincing is the very next subsection, § 3730(c)(2)(b). This subsection is concerned not with dismissal, but with the settlement of the action. It states that "The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." Sibley argues that this provision supports her argument that the government must show dismissal is necessary.

The similarity between the two subsections, however, disproves Sibley's point. Both provide that the government may dismiss or settle the action "notwithstanding the objections" of the relator. But § 3730(c)(2)(B) goes on to say that the government may only settle "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." Section 3730(c)(2)(A), however, gives no standard; it requires only that the "the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." "'[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and

---

[7] Consistent language is found in the Federal Rules of Civil Procedure. Where no court order is required, "the *plaintiff may dismiss* an action . . . ." Fed. R. Civ. P. 41(a)(1). However, when leave of court is required, "an action *may be* dismissed . . . only . . . on terms that the court considers proper. Fed. R. Civ. P. 41(a)(2)(emphasis added).

purposely in the disparate inclusion or exclusion.'" *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)). Section 3730(c)(2)(B) contains explicit statements requiring the court to make determinations about the settlement. Section 3730(c)(2)(A) does not. That means that § 3730(c)(2)(A) demands no finding.

Sibley last argues that even under an unfettered discretion standard, the government can no longer unilaterally dismiss the defendant after the defendant has been served. That is incorrect. Sibley relies on language from *Swift*, where the D.C. Circuit reserved the question of what the applicable standard would be after the defendant had been served and filed an answer or motion for summary judgment. The *Swift* court stated that interpreting § 3730(c)(2)(A) to give the government unreviewable authority to dismiss would be consistent with Rule 41(a)(1)(i), which allows the plaintiff to dismiss a civil action without a court order if the defendant had not yet filed an answer or motion for summary judgment. *Swift*, 381 F.3d at 252. However, "[i]f the government tried to have an action dismissed after the complaint had been served and the defendant answered, it might be subject to Rule 41(a)(2) . . . ." *Id.* at 252-253. The distinction the *Swift* court made is not whether the defendant had been served, but whether the defendant had answered or filed a motion for summary judgment. Delta Regional has filed neither an answer or a motion for summary judgment. Therefore, there is no discernible distinction from *Swift*. Moreover, the text of § 3730(c)(2)(A) provides no basis for a pre/post service distinction, and the D.C. Circuit has since applied the unfettered discretion standard in cases where the defendant had been served. *See Hoyte v. Am. Nat. Red Cross*, 439 F. Supp. 2d 38, 41 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.C. Cir. 2008).

Because § 3730(c)(2)(A) gives the government unfettered discretion to dismiss a False Claims Act action brought by a relator in its name, the Court must grant the government's motion.

**IV. Dismissal is warranted even under the *Sequoia Orange* standard.**

Even if § 3730(c)(2)(A) does not permit the government wholly unfettered distraction to dismiss *qui tam* actions, the government would still meet its burden to justify dismissal.

The *Sequoia-Orange* standard is not "particularly arduous." *Nasuti ex rel. U.S. v. Savage Farms, Inc.*, No. CIV.A. 12-30121-GAO, 2014 WL 1327015, at *10 (D. Mass. Mar. 27, 2014), *aff'd sub nom. Nasuti v. Savage Farms Inc.*, No. 14-1362, 2015 WL 9598315 (1st Cir. Mar. 12, 2015); *see also U.S. ex rel. Wickliffe v. EMC Corp.*, 473 F. App'x 849, 853 (10th Cir. 2012) (describing the *Sequoia Orange* standard as only "slightly more restrictive" than the *Swift* standard). A two-step analysis applies: first, the government must identify a valid government purpose; and second, there must be a rational relationship between dismissal and accomplishment of the purpose. *Sequoia Orange Co.*, 151 F.3d at 1145.

*A. The government has stated a valid reason for dismissal that Sibley cannot refute.*

"[T]o establish a rational relation to a valid governmental purpose, there need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision." *Ridenour*, 397 F.3d at 937 (internal quotations omitted). Once the government satisfies that test "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.*

The government advances two reasons why dismissal is warranted here, both of which constitute valid reasons for dismissal. First, the government has shown that continuing this case threatens to interfere with the Department of Health and Human Services-Office of the Inspector General's EMTALA enforcement efforts. Look no further than the efforts of relator's counsel to enjoin settlement between OIG-HHS and the defendant hospital in *U.S. ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-cv-00767-DPJ-FKB (S.D. Miss. Oct. 23, 2015). Like this case, the relator there has brought a False Claims Act action premised on the defendant hospital's alleged EMTALA violations. HHS-OIG and the hospital have attempted to settle the penalties associated with the underlying EMTALA violations

14

administratively. However, the relator, also represented by Sibley's counsel, sought to prevent that settlement from occurring, and the hospital has remained unwilling to settle with HHS-OIG out of fear that it would increase its risk in the False Claims Act action.

Second, the government has shown that dismissing this case would conserve government resources. Even though the government has elected not to intervene, it must still monitor the litigation. *See Sequoia Orange*, 151 F.3d at 1146 ("[T]he government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs"); *U.S. ex rel. Toomer v. TerraPower, LLC*, No. 4:16-CV-00226-DCN, 2018 WL 4934070, at *4 (D. Idaho Oct. 10, 2018). The government will also be required to bear discovery burdens and costs if litigation on these claims continues.

Since the government has met its burden, Sibley must now show that dismissal is fraudulent or arbitrary and capricious. She does not.

Sibley first asserts that there is evidence that the government is conspiring with Delta Regional to "sacrifice" her False Claims Act claims so that they can settle the EMTALA violations without meeting the settlement or alternative remedies requirements of § 3730. *See* 31 U.S.C. 3730(c)(2)(A) & (c)(5). However, Sibley provides nothing beyond speculation that any agreement between the two exists. Further, the Court is not convinced that if this agreement did exist, it would render dismissal "fraudulent." Delta Regional's liability for any False Claims Act violations exists separately from its liability for any EMTALA violations. The False Claims Act requirements would not apply to that potential settlement.

Sibley also asserts that the government has not presented evidence of a cost-benefit analysis showing that the value of the potential recovery would not exceed the cost of litigation. However, it is not the government's burden to provide evidence of its state reason. *Nasuti*, 2014 WL 1327015, at *12 (citing *Ridenour*, 397 F.3d at 937). Instead, it is Sibley's

burden to provide evidence that the government's stated reasons are arbitrary and capricious, fraudulent, or illegal. Sibley fails to do that here.[8]

> B. *Sibley is not entitled to discovery or an evidentiary hearing into the government's stated reasons for dismissal.*

Sibley asserts that under the *Sequoia Orange* standard she is entitled to discovery into the government's purported reasons for seeking dismissal.

Sibley provides no statutory basis for that request. Instead, she cites to *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004) (*Riley II*) for the proposition that the Court should permit discovery when the plaintiff has presented examples of claims. In *Riley II*, the Fifth Circuit reversed the district court's grant of the defendant's motion to dismiss under 12(b)(6). *Id.* at 373. *Riley II* thus has no bearing on whether a relator may obtain discovery into the government's motion to dismiss under § 3730(c)(2)(A).

Further, Sibley misstates the relevant sections of *Riley II*. The plaintiff in *Riley II* alleged, among other things, that the Defendant hospital operated a fraudulent scheme of performing medically unnecessary heart transplants that were reimbursed by government programs. *Id.* at 374. Importantly, the plaintiff attached several medical records related to some of her claims as examples of medically unnecessary transplants. The district court dismissed the claims, finding that attached exhibits established that the transplants were necessary and so the plaintiff could not prove her claims. *Id.* at 377.

The Fifth Circuit reversed, noting that while the exhibits called into doubt the veracity of her allegations about some transplants, they did not conclusively disprove all of the unnecessary transplant claims the plaintiff alleged. *Id.* at 377 ("Even if Riley's exhibits called into question one or more of the examples she alleged, they did not call into question

---

[8] Because, as discussed below, Sibley's claims in Counts I-IV are without merit, *any* expenditure of government resources in litigating those claims would be wasteful.

all her allegations of false claims.") Since the plaintiff had sufficiently pleaded several instances, the district court could not use two "examples" to discount all of them. *Id.*

The "examples" referred to in *Riley II* were exhibits attached to the complaint that pertained to certain claims, not the actual false claims allegations made in the complaint. Moreover, in *Riley II*, the plaintiff had sufficiently pleaded the claims. Contrary to Sibley's assertions, she has provided no "examples," but instead instances that she asserts form the basis of false claims. And as discussed below, those instances do not establish that false claims occurred.

Sibley also contends that she is entitled to an evidentiary hearing as a matter of right. Not so. Again, Sibley cites no statutory basis for that request. As numerous courts have held, "the hearing requirement is satisfied by allowing the relator an opportunity to submit a response to the motion." *U.S. ex rel. May v. City of Dallas*, No. 3:13-CV-4194-N-BN, 2014 WL 5454819, at *4 (N.D. Tex. Oct. 27, 2014) (collecting cases). Even courts that apply the *Sequoia Orange* standard do not grant a hearing as a matter of right. Instead, they grant a hearing only when the relator "can show a substantial and particularized need for a hearing" *Wickliffe*, 473 F. App'x at 854 (quoting *Ridenour*, 397 F.3d at 931)); *Sequoia Orange*, 151 F.3d at 1145 (holding hearing is only necessary when "the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision is based on arbitrary or improper considerations.") As discussed above, Sibley has cited to nothing beyond speculation to show the dismissal is unwarranted. She has therefore not justified the need for a hearing.

*C. Relator has failed to allege any false claims for counts I-IV*

Lack of merit of the relator's claims is not a prerequisite dismissing relator's claims under the rational relation standard. *See Ridenour*, 397 F.3d at 929 (affirming district court's dismissal of *qui tam* action where government stipulated for purposes of the motion

that relator's claims had merit.) However, if relator's claims are without merit, then dismissal must be rational, because there is no valid government interest in pursuing meritless claims.

Under Rule 12(b)(6) the complaint "'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). ). In determining whether the complaint states a claim, the Court is limited to the allegations in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955.

The False Claims Act is a fraud statute. Complaints asserting violations of the Act, therefore, must comply with Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *U.S. ex rel. Thompson*

*v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Traditionally, this has meant that the plaintiff must plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999), *abrogated on other grounds by U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 129 S. Ct. 2230, 173 L. Ed. 2d 1255 (2009).

The false claims at issue here are the Medicaid and Medicare reimbursement claims Delta Regional submitted to the government. But Sibley's complaint does not identify the particulars of any specific Medicaid or Medicare claim. Instead, Sibley identifies 52 instances where Delta Regional failed to provide emergency medical treatment to patients and then generally alleges that Delta Regional submitted Medicaid and Medicare claims, not necessarily in connection with its treatment of those 52 patients. Thus, the complaint fails to allege the particular details of any claim that Delta Regional submitted.

Particularity within the meaning of Rule 9(b), however, is "context specific." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Thus, the Fifth Circuit has held that within the context of False Claims Act, where the relator "cannot allege the details of an actually submitted false claim, [she] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

Even under this standard, the complaint fails. In *Grubbs*, the plaintiff alleged in detail a meeting in which defendants informed plaintiff of their scheme to submit Medicare and Medicaid claims for services they did not perform. *Id.* at 191–192. He also alleged specific instances where hospital staff attempted to assist him in making false records of physician visits. *Id.* at 192. Finally, the plaintiff pleaded both a description of the hospital's billing system and specific instances where the defendants recorded false entries into that system.

*Id.* The Fifth Circuit held this these facts taken together sufficiently stated that employees sufficiently stated that the defendants submitted those bills to the government. *Id.*

By contrast, Sibley does not allege the particulars of any scheme perpetrated by Delta Regional to submit false claims. To be sure, the complaint does allege the routine failure of Delta Regional to comply with EMTALA. However, the complaint alleges in only a conclusory manner that Delta Regional intentionally hid its violations, and it provides no facts supporting an inference that Delta Regional intentionally hid them in relation to Medicare and Medicaid claims. Ultimately, the complaint merely states that Delta Regional committed EMTALA violations, and that Delta Regional submits some claims to the government for reimbursement. It does not allege facts that allow the Court to infer how one relates to the other.

In Count I, Sibley asserts an express false certification claim. An express certification claim arises when "a party affirmatively and explicitly certifies compliance with a statute or regulation and the certification is a condition to receiving the government benefit." *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 766 (S.D. Tex. 2010) (citing *Thompson.*, 125 F.3d at 903). It is not enough that a certification of compliance with a statute or regulation is false. The defendant must make the certification to the government. "The *submission* of a false claim is the 'sine qua non of a False Claims Act violation.'" *Jamison*, 784 F. Supp. 2d at 675 (citing *Hopper v. Solvay Pharms., Inc.,* 588 F.3d 1318, 1328 (11th Cir. 2009) (emphasis added)).

Sibley asserts that when Delta Regional submitted a Medicare or Medicaid claim, it expressly certified that "payment and satisfaction of this claim will be made from Federal and State funds, any false claims, statements, documents, or concealment of any material fact, may be prosecuted under applicable Federal or State laws." Compl., Doc. 16 at 8, ¶ 30. As Delta Regional correctly notes, that statement is not a certification of compliance with any regulation.

Sibley also generally asserts that on numerous occasions, Delta Regional falsely certified compliance with EMTALA's requirements. However, Sibley pleads no specific instances where Delta Regional made that certification, and so she does not plead with particularity any false certification.

Finally, Sibley asserts that on many occasions Delta Regional falsely certified that EMTALA's transfer conditions were met when it transferred patients to other facilities. However, there is no allegation that Delta Regional presented or caused to be presented any of these transfer certifications to the government. Thus, there is no allegation that Delta Regional falsely certified to the government that the transfer conditions had been met.

Sibley further fails to allege any reliable indicia that Delta Regional submitted any claims related to the violations in the complaint. Although the complaint lists 52 patients that Delta Regional inappropriately treated, the complaint identifies only one of those patients as insured by either Medicare or Medicaid.[9] The complaint does not allege that Delta Regional sought reimbursement for the services it provided to that patient, and it does not allege that Delta Regional told the government it had transferred the patient in compliance with EMTALA when seeking reimbursement. Accordingly, Sibley fails to plead an express false certification claim sufficiently.

In Count II, Sibley asserts a reverse false claim. Reverse false claims arise under 31 U.S.C. § 3729(a)(1)(G), which imposes liability on anyone who "makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." An obligation is "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based

---

[9] In her motion papers, Sibley identified other patients also covered by Medicare or Medicaid. Because those allegations are not in her complaint, the Court need not consider them. Nonetheless, were the Court to consider those assertions, the claims would still fail.

or similar relationship, from statute or regulation, or from the retention of any overpayment." *Id.* § 3729(b)(3). "This is known as a reverse false claim because the effect of the defendant's knowingly false statement is a failure to pay the Government when payment is required." *United States v. Caremark, Inc.*, 634 F.3d 808, 815 (5th Cir. 2011)

A key feature of "obligations" under the statute is that there must be an already "established duty to pay." *United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.*, 843 F.3d 1033, 1039 (5th Cir. 2016) (quoting § 3729(a)(1)(g)). Statutes that impose civil penalties are "mandatory on in the sense that 'once a violation has been established, some form of penalty is required'" *Id.* at 1041 (quoting *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) A statute enforced through unassessed monetary penalties "creates an obligation to obey the law, not an obligation to pay money." *Id.* at 1037 (internal quotations omitted). Further, if the enforcing agency has discretion in assessing regulatory penalties, they are not due until the agency demands them. *Id.* at 1040–1041. Thus, "unassessed regulatory penalties are not obligations under the False Claims Act." *Id.* at 1040.

Sibley pleads two obligations: (1) fines and civil penalties Delta Regional owes for each fraudulently submitted reimbursement claim; (2) and fines and civil penalties for each EMTALA violation.[10] She asserts that Delta Regional's failure to report its False Claims Act and EMTALA violations to the government, means Delta Regional has effectively defrauded the government of money Delta Regional owes to it.

Monetary civil penalties imposed by the Office of the Inspector General for the Department of Health and Human Services both for submitting false claims and for EMTALA violations are discretionary. 42 C.F.R. §1003.200 (providing that "OIG *may* impose" a penalty or assessment against any person who presents a false claim"); 42 C.F.R.

---

[10] Sibley also alleges there are "additional fines, penalties, program fees, etc." that "will be proven at trial." To the extent that these assert a separate basis for any reverse false claim liability, this nonspecific allegation fails to state any factual matter which would support a claim for relief.

§ 1003.500 (OIG "*may* impose a penalty against a participating hospital" for EMTALA violations.) Thus, they are only obligations for purposes of a reverse false claim if the OIG has already imposed and demanded them. Sibley, however, does not plead facts that show that the OIG has already imposed penalties on Delta Regional. Moreover, the government has stated that there have been no penalties yet assessed against Delta Regional. Sibley does not plead an obligation owed to the government, and thus she fails to plead a viable reverse false claim.

In Count III, Sibley asserts an implied false certification claim. Implied false certification liability attaches in certain circumstances where a defendant submits a claim that makes specific representations, but fails to disclose its noncompliance with statutory, regulatory, or contractual obligations such that the omission makes those representations misleading. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1995, 195 L. Ed. 2d 348 (2016).

In *Escobar*, the Supreme Court affirmed that in some instances, a claim in which the payee implicitly certified that it complied with applicable statutory, regulatory, or contractual requirements could give rise to False Claims Act liability. Julian Escobar's child, Yarushka Rivera, a Medicaid beneficiary in Massachusetts, received counseling services at a facility owned by Universal Health Services *Id.* at 1997. When Universal Health submitted Medicaid reimbursement claims for treatment it gave to Rivera, it included payment codes for the type of services performed. Massachusetts' Medicaid program required individuals performing those services to be licensed. *Id.* Further, Universal Health included National Provider Identification numbers, which correspond with particular job titles, on the claims. *Id.*

Escobar learned that almost all of the facility staff that treated Rivera were unlicensed. Escobar brought a *qui tam* False Claims Act case against Universal Health, asserting that when Universal Health submitted reimbursement claims for specific services (using the payment codes associated with particular services) performed by specific types of

professionals (using the National Provider Information codes), Universal Health implicitly certified that the individuals who performed those services were licensed to do so. *Id.* at 1997–98. And when Universal Health submitted those claims without informing the program that the individuals who performed those services were not licensed, it defrauded the Medicaid program, who would not have paid had it known. *Id.* at 1998.

The Supreme Court took up the case to resolve a circuit split about whether implied false certification was a valid theory of liability. Unanimously, the Court held it was. *Id.* at 2001. Specifically, the Court held that implied false certification could be a basis for liability when: (1) the claim for payment "makes specific representations about the goods or services provided" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.*

The Supreme Court concluded that Escobar sufficiently pleaded that Universal Health submitted false claims. Universal Health submitted claims for reimbursement using payment codes, representing that specific services and been performed, and National Provider Identification numbers, representing that a specific type of healthcare practitioner performed the service. *Id.* at 2000. However, Universal Health's "many violations of basic staff and licensing requirements" rendered those claims misleading, because they falsely implied that the individuals who performed those services were licensed. *Id.*

Turning to this case, Sibley fails to show any claim submitted by Delta Regional for payment that makes a specific representation about goods or services it provided. Because liability under the implied certification theory can only arise out of claims that "make[] specific representations about the goods and services provided," *Escobar* 136 S. Ct. at 1989, there must be some facts that indicate how medical services were recorded and ultimately submitted. There are no allegations as to what entries Delta Regional made into billing records for any of the 52 patients. Nor are there any facts indicating how Delta Regional integrates those records into a bill. Thus, the Court cannot infer that Delta

24

Regional made any specific representations about what services it provided on any particular claim.

As to both Counts I and II, the Court is also unconvinced that compliance with EMTALA is material to the Medicare and Medicaid payments. "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Id.* at 2002. The Supreme Court has said that:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2003. The plaintiff, therefore, must plead "facts to support allegations of materiality" *Id.* at 2004 fn.6.

There are no facts here that suggest that had the government known of Delta Regional's EMTALA violations it would not have paid a specific claim. That is because there are no facts about any particular claim that may have been submitted to the government at all. The Court cannot assess materiality because it cannot infer that Delta Regional ever submitted a Medicare or Medicaid claim about any particular service.

Finally, in Count IV, Sibley alleges a worthless services claim. She alleges that "upon information and belief" Delta Regional provided deficient services "by providing and charging for inadequate medical screening" that other hospitals needed to repeat after Delta Regional transferred the patients. Compl., Doc. 16 at 40. Although the Fifth Circuit has not explicitly recognized a worthless services theory of liability, several other circuits have. *See Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468–69 (6th Cir. 2011); *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009); *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001). Further, another district court within

this state has recognized it as a valid theory under the False Claims Act. *See U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, No. 3:10-CV-552-CWR-LRA, 2014 WL 3385189, at *43 (S.D. Miss. July 9, 2014).

In a worthless service claim, liability arises when the defendant seeks payment for services but "the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all." *Mikes v. Straus*, 274 F.3d 687, 703 (2nd Cir. 2011). Like the rest of her claims, Sibley has failed to allege sufficient facts to support a worthless services claim. She alleges no fact surrounding the services Delta Regional provide to the patients that would allow one to infer they were worthless. For the vast majority of the patients, there are no facts about the type and quality of services that Delta Regional provided. Moreover, for any patient, Sibley fails to allege any fact indicating that Delta regional billed the government for these supposedly deficient services. *See Hendricks v. Bronson Methodist Hosp., Inc.*, No. 1:13-CV-294, 2014 WL 3752917, at *6 (W.D. Mich. July 30, 2014) (holding plaintiff failed to plead worthless services claim when she failed to allege that any claim related to service was submitted for payment). Her worthless services claim fails.

### Conclusion

For these reasons, the Court holds that under the False Claims Act, the government possesses the unfettered discretion to dismiss a suit brought by a relator. Thus, the government may dismiss Counts I through IV of Sibley's complaint. Further, even under a more stringent rational relation standard, the Court finds that the government has met its burden. Accordingly, the government's motion is granted, and Counts I through IV of her complaint are dismissed.

An order in accordance with this opinion shall issue.

This, the 21st day of March 2019.

_Glen H. Davidson_

SENIOR U.S. DISTRICT JUDGE